IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JULIE SINCLAIR, and
ROBERT SINCLAIR,

          Plaintiffs,

v.                                      Case No. 20-1116-JWB

YUNIESKI RODRIGUEZ, and
Y&K TRUCKING, LLC,

          Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motion for partial summary judgment (Doc. 63), motion to exclude opinions of Jimmy Sill (Doc. 65), and motion to exclude opinions of Brian A. Coon (Doc. 66), as well as Plaintiffs' motion for a hearing.  (Doc. 75.)  The motions are sufficiently briefed and are ripe for decision.  (Docs. 64, 66, 68, 69, 72, 73, 74, 76.)  For the reasons stated herein, Defendants' motions to exclude opinions of Sill and Coon are GRANTED; Plaintiffs' motion for hearing is DENIED; and Defendants' motion for partial summary judgment is GRANTED.

### I.  Background

As summarized in the pretrial order (Doc. 59), Plaintiffs filed this action following a traffic accident on September 8, 2019, in Garden City, Kansas.  Julie Sinclair was driving a recreational vehicle ("RV") that was pulling a trailer loaded with a Subaru vehicle.  Julie's husband Robert Sinclair was a passenger in the RV.   Yunieski Rodriguez, an employee of Y&K Trucking LLC, was operating a Peterbilt flatbed tractor-trailer loaded with petroleum pipes.  (*Id.* at 2-3.)

U.S. Highway 50/83 runs north and south.  Plaintiffs were headed south on Highway 50/83. Mary Street runs east and west and passes under Highway 50/83, which is elevated by an overpass at the point where the two intersect.  A traveler going south on Highway 50/83 and wanting to turn on Mary Street first exits to an access road that runs parallel to Highway 50/83 on the west side of the highway.  That southbound access road intersects with Mary Street, with the intersection controlled by a rather complex series of traffic lights.  A southbound traveler reaching the intersection from the access road can turn left (east) or right (west) on Mary Street or can continue straight (south) on the access road.  A traveler turning left (east) on Mary Street starts from the intersection of the access road and Mary Street on the west side of the underpass, heads east beneath the underpass, and then passes through a mirror-image intersection on the east side of the underpass, which is where the access road for northbound traffic intersects with Mary Street.  The latter intersection is also controlled by traffic lights.  It allows a northbound traveler to turn right (east) or left (west) on Mary Street, or to continue straight ahead (north) on the access road, which eventually rejoins Highway 50/83.

The following satellite image from Google Maps illustrates the intersection where the accident occurred.



[Note: U.S. Highway 50/83 is labeled Highway 400 in this image.]

Due to construction on the day of the accident, traffic was diverted off Highway 50/83 to the north and southbound access roads running parallel to the highway.  Plaintiffs allege that after traveling southbound on the access road just west of the underpass, they lawfully entered the intersection of Highway 50/83 and Mary Street on a green arrow light, intending to turn left on Mary Street.  They allege that Rodriguez, who was northbound on the access road just east of the overpass, either entered the intersection on a red light or entered on a green light while Plaintiffs were already lawfully in the intersection, thereby causing a collision.  Plaintiffs contend Rodriguez, who was talking on a handsfree Bluetooth telephone headset at the time of the collision, was in a superior position to avoid the collision.  Plaintiffs allege they suffered injuries and seek various damages.  (Doc. 59 at 3-5.)   Plaintiffs contend Rodriguez was negligent in a number of respects as set forth in the opinions of accident reconstruction expert Brian Coon.  They allege Rodriguez was acting within the scope and course of his employment, making Y&K Trucking LLC ("Y&K Trucking") vicariously liable for their damages.  Plaintiffs further contend Y&K Trucking was directly negligent in a number of respects as set forth in the opinions of trucking standards expert Jimmy Sill.

Defendants contend Julie Sinclair was at fault for the accident.  They contend the traffic light facing Rodriguez was initially red but changed to green as he approached the Mary Street intersection.  Rodriguez entered the intersection, allegedly saw the RV turning into his path, and attempted to accelerate to clear the intersection.  In his rear-view mirror, Rodriguez saw the RV strike the wheels of his trailer (the 4th axle), with three-fourths of his tractor-trailer passing in front of the RV before contact.  Defendants contend Julie Sinclair either entered the intersection on a red light or entered on a green or yellow light and traveled so slowly that Rodriguez's light was green for more than six seconds before the impact.  (*Id.* at 6-8.)  Defendants deny they were

negligent, dispute the cause and extent of Plaintiffs' damages, and allege that Julie Sinclair was at fault for the accident.

The following diagram illustrates the relative position of the vehicles at the point of the impact in the intersection just east of the Highway 50/83 overpass:



Figure 4.  Scene Diagram (Semke).

Rodriguez and Julie Sinclair both told police they had green lights when they proceeded into the intersection.  The police were unable to locate any other witnesses to the condition of the traffic lights at the time of the accident.  (Doc. 65-7.)

## II.  Motion to Exclude Expert Opinions (Docs. 65, 66); Motion for Hearing (Doc. 75.)

Defendants have filed motions to exclude opinions from two of Plaintiffs' experts pursuant to *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).  One of the witnesses is proffered as an expert on trucking industry standards and the other is an accident reconstruction specialist.

### A.  Standards

Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

The district court must first determine whether the witness is qualified by knowledge, skill, training, experience, or education to render an opinion. *Schulenberg v. BNSF Ry. Co*., 911 F.3d 1276, 1282 (10th Cir. 2018) (*citing United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)).  If so, the district court must determine whether the witness's opinion is reliable by assessing the underlying reasoning and methodology. *Id*. at 1283.  "Reliability is about 'the reasoning and methodology underlying the expert's opinion.'"  *United States v. Wofford*, 766 F. App'x 576, 581 (10th Cir. 2019) (quoting *United States v. Rodriguez-Felix,* 450 F.3d 1117, 1123 (10th Cir. 2006)).  "Relevance is about whether the expert testimony 'will assist the trier of fact' or whether it instead falls 'within the juror's common knowledge and experience' and 'will usurp the juror's role of evaluating a witness's credibility.'"  *Id.* (quoting *Rodriguez-Felix*, 450 F.3d at 1123.) *See also Daubert,* 509 U.S. at 593 (relevance depends on "whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.")

In *Daubert,* the Supreme Court identified four factors that trial courts should consider in performing their gatekeeping role of determining the reliability of expert testimony: (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community. *Id*. at 593–94. "The Supreme Court has emphasized, however, that these four factors are not a 'definitive checklist or test,' and that a court's ... inquiry about reliability 'must be tied to the facts of a particular case.'" *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices*

& *Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020)

(quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). In some cases, "the relevant

reliability concerns may focus upon personal knowledge or experience, rather than the *Daubert*

factors and scientific foundation." *Id*. (citing *Kuhmo Tire Co*., 526 U.S. at 150) (internal quotation

marks omitted). For such testimony to satisfy the reliability standard, it must be based on actual

knowledge, and not mere subjective belief or unsupported speculation. *Id*. (citing, inter alia,

*Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A*., 858 F.3d 1324,

1341–42 (10th Cir. 2017)).

The court is not required to admit opinion evidence that is "connected to existing data only

by the ipse dixit of the expert," and may exclude the opinion if "there is simply too great an

analytical gap between the data and the opinion offered." *Id*. (quoting *Gen. Elec. Co. v. Joiner*,

522 U.S. 136, 146 (1997)). But the rejection of expert testimony is the exception rather than the

rule, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

evidence." *Daubert*, 509 U.S. at 596.

*Daubert* noted that in assessing expert testimony, judges should also be mindful of other

applicable rules:

> Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are
> to be admitted only if the facts or data are "of a type reasonably relied upon by
> experts in the particular field in forming opinions or inferences upon the subject."
> Rule 706 allows the court at its discretion to procure the assistance of an expert of
> its own choosing. Finally, Rule 403 permits the exclusion of relevant evidence "if
> its probative value is substantially outweighed by the danger of unfair prejudice,
> confusion of the issues, or misleading the jury...." Judge Weinstein has explained:
> "Expert evidence can be both powerful and quite misleading because of the
> difficulty in evaluating it. Because of this risk, the judge in weighing possible
> prejudice against probative force under Rule 403 of the present rules exercises more
> control over experts than over lay witnesses." Weinstein, 138 F.R.D., at 632.

*Daubert*, 509 U.S. at 595.

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*." *In re EpiPen*, 2020 WL 1164869, at *3 (citing *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019)). The most common method of fulfilling that role is by conducting a *Daubert* hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1087 (10th Cir. 2000).

**B.  Opinions of Jimmy Sill. (Doc. 65.)**

Plaintiffs have designated Jimmy J. Sill as a trucking standards expert to offer various opinions relating to the alleged negligence of Y&K Trucking.  (Doc. 59 at 9.)  Sill's report is found at Doc. 65-1 and his deposition is at Doc. 165-2.  Defendants seek to exclude this testimony, arguing Sill's opinions rely on an insufficient methodology, contain legal conclusions and are not based on scientific knowledge or principles, are based solely on ipse dixit, and pertain to irrelevant matters that did not cause the accident.  (Doc. 65 at 26.)

1.  Opinion that Rodriguez failed to yield the right-of-way.  (Doc. 65 at 3.) Sill's report includes an assertion that Rodriguez "failed to yield the right of way…."  (Doc. 65-1 at 10.) Plaintiffs concede that Sill is not an accident reconstructionist and "should not be able to testify that Mr. Rodriguez failed to yield the right of way."  (Doc. 69 at 1.)  The motion to exclude any such opinion is therefore granted as uncontested.  Plaintiffs argue, however, that Sill should be able to testify that Rodriguez "was talking on a handsfree phone at the time of the collision and was distracted."  (*Id.*)

The court will exclude any opinion by Sill that Rodriguez was distracted by his use of a handsfree phone, because Plaintiffs have not shown that such an opinion is based on specialized knowledge or would be helpful to the jury in deciding the facts.  Sill's report states that some studies show use of a handsfree phone while driving can be a source of distraction, and because

8

there is evidence that Rodriguez did not see Plaintiffs until he was in the intersection, Sill believes it is "[m]ore probable than not … [that] … Rodriguez was distracted while driving…." (Doc. 65-1 at 21.)  Most lay persons would probably know from their own experience – whether from having done it, seen it, or heard about it – that use of a handsfree phone while driving can be a distraction. It is a matter within the knowledge and grasp of the average layperson.  Moreover, what the jury will have to decide here is whether Rodriguez was in fact distracted by his use of the phone and whether that played any role in the accident.  In opining that Rodriguez "[m]ore probabl[y] than not" was distracted, Sill did not invoke or rely on any specialized knowledge or training about trucking standards.  Rather, he merely inferred that Rodriguez was distracted from his behavior and the circumstances of the accident.  But lay jurors would be perfectly capable of examining the evidence and drawing such inferences about Rodriguez's conduct.  Defendant's motion to exclude the foregoing opinion by Sill is granted. *Cf. Yazzie v. Fezatte*, No. 16-CV-00472 JAP, 2018 WL 947971, at *3 (D.N.M. Feb. 16, 2018) ("the question of whether Defendant Fezatte was distracted or should have reacted a particular way to any observed defensive action taken by another driver ahead of him falls within the normal life experiences of the jury and does not constitute specialized knowledge.")

2. Testimony that Rodriguez struck the Sinclairs' vehicle. (Doc. 65 at 3.)  Sill's report states that Rodriguez entered the intersection, "striking the vehicle that Julie Sinclair was operating." (Doc. 65-1 at 10.)  This appears to be a factual assertion rather than an opinion, but in any event the court finds it is a moot point because, as discussed herein, Plaintiffs have not shown any basis for admission of Sill's testimony.

3. Testimony that Rodriguez's negligence proximately caused the collision and Plaintiffs' injuries. (Doc. 65 at 3.)   Sill's report contains a list of "considerations" for review, including

whether the "negligence of [Defendants] … proximately caused the collision and the personal injuries and damages" of Plaintiffs, and examination of whether Y&K Trucking engaged in negligent hiring, retention, training, supervision, or failure to implement safety programs relating to Rodriguez. (Doc. 65-1 at 12.) Defendants contend any opinion by Sills about proximate cause should be excluded. Plaintiffs essentially concede the point but argue Sills should be able to testify that this collision qualified as a "recordable accident" under United States Department of Transportation (USDOT) regulations because Plaintiffs were injured and treated away from the scene and one of the vehicles was towed away. (Doc. 69 at 2.)

The court finds the motion to exclude any opinion testimony of Sills about proximate cause of the accident or injuries should be granted. The court further finds Sill's opinion that this was a "recordable accident" under USDOT regulations should be excluded. Plaintiffs have failed to identify the relevance of such an opinion to the factual issues to be decided by the jury – namely, to the comparative fault of the parties and Plaintiffs' damages.

4. <u>Opinions that attempt to reconstruct the accident (not disclosed in the report)</u>. (Doc. 65 at 13.) Plaintiffs concede this issue. (Doc. 69 at 2.) Any such opinions are excluded.

5. <u>Opinions that Rodriguez was distracted because he was on a handsfree Bluetooth device at the time of the accident</u>. (Doc. 69 at 2.) This concerns Rodriguez's use of the phone, which was discussed above. For the reasons indicated previously, such opinions will be excluded.

6. <u>Opinions that Y&K did not maintain regulatory records or other matters that were not involved in the accident, and/or testimony about Y&K's state of mind</u>. (Doc. 65 at 3.) Sill acknowledged in his testimony that Rodriguez (who was the sole owner of Y&K Trucking LLC) had a commercial driver's license ("CDL"), medical card, and appropriate drug tests, and that he did not personally have any conditions or history that would have precluded him from being

qualified as a commercial driver.  Sill testified, however, that because Y&K Trucking failed to maintain the complete records required by Federal Motor Carrier Safety Administration ("FMCSA") regulations, and "the absence of complete records means they have no records" for purposes of regulatory compliance, such that for administrative and regulatory purposes Rodriguez was a disqualified driver.  (Doc. 65-2 at 117:8-10.)   Sill explained:

> [W]e are talking about paperwork and we are talking about administrative and we are talking about managerial, we are talking about what is spelled out in 390 and 392 where a manager and an owner of a company takes on the due diligence and responsibilities of a motor carrier to affirm that these properties are being met.  And not doing so renders a driver disqualified, thus, he was a disqualified driver, even if he was not a disqualified driver, if he had done his due diligence.

(*Id.* at 144:4-17.)

Sill's opinion that Rodriguez was a disqualified driver is based on Sill's assessment that Y&K Trucking failed to comply with regulatory record-keeping requirements.  Even assuming that to be true, Plaintiffs fail to explain how Rodriguez's or Y&K's status under the regulations is causally related to either the accident or Plaintiffs' claimed injuries.  Nothing Rodriguez is alleged to have done while driving through the intersection bears any apparent relation to the regulatory failures identified by Sills.  Nor did Sill identify any such relationship.  Sill in fact conceded that the "[a]dministrative failures were not the cause of this accident."  (Doc. 69 at 6.)  Plaintiffs contend Sill's opinion would be "helpful to the jury to understand … what a driver has to do when they own the company and take on the responsibilities of a motor carrier."  (Doc. 69 at 7.)  But Kansas law on comparative fault requires proof of more than just the violation of a duty of care; it requires a showing that the violation caused or contributed to the event which brought about the injury.  *See Reynolds v. Kansas Dep't of Transp.*, 273 Kan. 261, 269, 43 P.3d 799 (2002).  Because nothing is cited to show that the record-keeping and regulatory failures of Y&K Trucking identified by Sill caused or contributed to the September 8, 2019 accident, Sill's opinions about

those failures would not be helpful to the jury.[1]  The opinions are accordingly excluded.  *See Raglin v. MSJ Trucking, Inc.*, No. 3:12-CV-543-DPJ-FKB, 2013 WL 6631546, at *2 (S.D. Miss. Dec. 17, 2013) ("[T]he various FMCSR violations upon which Maxwell relies were not the proximate cause of the accident. … Imposing liability for FMCSR violations under the theory that the truck or driver would not have been on the road at all removes legal cause from the equation and imposes strict liability."); *Trinidad v. Moore*, No. 2:15CV323-WHA, 2016 WL 5239866, at *4 (M.D. Ala. Sept. 20, 2016) (court excluded expert's opinion that driver was not qualified due to lack of certification of his medical condition because "there is no evidence that [the driver's] physical condition contributed to the wreck in any way.")

7.  <u>Opinion that the accident was "preventable" under National Safety Council (NSC) standards</u>.  (Doc. 65 at 17.)  Sill discussed NSC standards in his deposition and opined that the accident would be considered "preventable" under those standards.  Defendants seek to exclude this opinion, arguing the NSC standards are not the relevant industry standards, that Sill did not cite NSC standards in his report, and that the term "preventable" would be confusing to the jury because it differs from the applicable negligence standard.  (Doc. 65 at 17.)  In response, Plaintiffs argue the opinion should be admitted because "Sill was very clear in his deposition that if a collision was preventable that does not mean that the commercial driver was negligent," and Defendants can cross examine Sill about the opinion.  (Doc. 69 at 5-6.)

The court will exclude the opinion.  Plaintiffs have not explained how Sill's opinion is relevant to any of the issues the jury must decide.  Moreover, the probative value of the opinion is substantially outweighed by the danger of unfair prejudice, as the question of whether this accident was "preventable" under regulatory standards is confusingly close but not identical to the question

---

[1] This conclusion is discussed in more detail infra as it relates to Defendants' motion for partial summary judgment.

of whether a party failed to exercise ordinary care for purposes of proving fault under Kansas law. Fed. R. Evid. 403.  *Cf. Trinidad v. Moore*, No. 2:15CV323-WHA, 2016 WL 5239866, at *6 (M.D. Ala. Sept. 20, 2016) (court excluded expert's opinion that the accident "would be classified as a preventable accident" under NSC standards as an inadmissible legal conclusion).

8. <u>Opinions on violations by Y&K Trucking that did not proximately cause the accident.</u> (Doc. 65 at 20.)  These opinions will be excluded for the reasons previously stated.

9. <u>Attempts to "repackage" testimony or tell the jury which witnesses to believe.</u>  (Doc. 65 at 23.)  Defendants object to portions of Sill's report containing summaries of witness statements and testimony.  (*Id.*) (citing Doc. 65-1, Lines 332-367.)  Defendants claim the statements are incomplete and selectively favor Plaintiffs.  In response, Plaintiffs argue that Defendants can cross-examine Sill and allow the jury to determine if he is misrepresenting witness testimony.  Plaintiffs argue Sill "should be able to comment on inconsistencies in testimony … or if a witness' statement was contrary to other evidence."  (Doc. 69 at 7.)

The court grants the motion to exclude this evidence.  Rule 703, which deals with the bases for expert opinion testimony, allows an expert to base an opinion on a wide range of data.  But any opinion formed from the data must still meet the requirements of Rule 702, and Plaintiff shows no basis for admission of Sill's opinions formed from his review of these witness statements and testimony.  There is nothing in the conclusion section of Sill's report that constitutes an admissible expert opinion formed in reliance upon the statement of witnesses.  In addition to opinions previously discussed, Sill opined that "As a professional driver, Yunieski Rodriguez … would have foreseen the hazards in the intersection prior to entering it; therefore, the actions of a reasonable and prudent person, would have avoided the collision," and "[b]ut for these actions or inactions of Yunieski Rodriguez, this accident would not have occurred."  (Doc. 65-1 at 21.)  These

opinions are entirely conclusory and fail to meet the requirements for admission of expert testimony.  Sill's opinions on causation are not shown to be based on a reliable foundation and would not assist the jury in its determination of causation.

10.  <u>Any opinion by Sill that Rodriguez failed to surrender his Florida driver's license</u>. (Doc. 65 at 23-24.)  Sill's report includes the following assertion:

> Rodriguez failed to surrender his Florida driver's license, for this he received a "failure to surrender license or permit["]; he subsequently surrendered his Florida driver's license, to receive his Texas Class A CDL [Commercial Driver's License].

(Doc. 65-1 at 17.)  Defendants argue any reference to this would be irrelevant and unfairly prejudicial, as it is undisputed that Rodriguez had a valid Texas CDL at the time of the accident. (Doc. 65 at 24.)  Plaintiffs contend the failure to surrender should have been considered by Y&K Trucking before hiring Rodriguez and that it shows Y&K did not meet trucking industry standards. (Doc. 69 at 7-8.)

The court grants the motion to exclude any reference by Sill to Rodriguez's failure to timely surrender his Florida license.  Plaintiffs have failed to show that any opinion by Sill about Rodriguez's previous failure to surrender this license bears any relation to the cause of the accident at issue in this case.

11.  <u>Rodriguez's conviction for failing to obey a traffic control device in 2013</u>.  (Doc. 65 at 24.)  Sill's report noted that in 2013 Rodriguez was convicted of "failure to obey sign or traffic control device."  (Doc. 65-1 at 17.)  Defendants argue any such testimony from Sill should be excluded because the violation occurred beyond the three-year "look back" period of FMCSA regulations, because it did not disqualify Rodriguez from being hired, and because it would be unfairly prejudicial under Rule 403.  Plaintiffs assert the conviction "will be offered to challenge the credibility of Mr. Rodriguez because he lied in his deposition when asked about if he ever received traffic citations."  (Doc. 69 at 8.)

The instant motion concerns the admissibility of Sill's proffered expert opinions rather than the admissibility of the prior traffic infraction per se.  Plaintiffs show no basis for introduction of such evidence via the opinion testimony of Sill.  The motion to exclude Sill's testimony about the prior conviction is therefore granted.

12.  <u>Opinion that Rodriguez should have foreseen the hazard and avoided the accident</u>. (Doc. 65 at 25.)   This testimony is excluded for reasons previously indicated.

13.  <u>Any new opinions not timely disclosed in Sill's expert report</u>.  (Doc. 65 at 25.) Plaintiffs state they do not intend to introduce new opinions but argue Defendants' motion is nevertheless vague.  Inasmuch as Plaintiffs have shown no basis for introduction of any expert opinion testimony by Sill, Defendants' motion to exclude Sill's testimony is granted in its entirety.

**C. Opinions of Brian A. Coon, Ph.D. (Doc. 66.)**

 Brian A. Coon, Ph.D., an accident reconstruction expert, was retained by Plaintiffs to offer rebuttal opinions to defense expert Fred Semke.  Coon has a Ph.D. in engineering and is the former Chief Traffic Engineer for the City of Wichita.   Coon's report is at Doc. 66-1 and his deposition is at Doc. 66-2.  Defendants seek to exclude the following two opinions by Coon.

1.  <u>Any opinion that Rodriguez could have stopped in time to avoid the accident</u>.  (Doc. 66 at 8.)  Defendants cite three statements by Coon in his report which Defendants contend lack sufficient foundation: (1) Rodriguez "had the opportunity and duty to observe a vehicle – even if that vehicle had run a red light – and could have stopped safely." (Doc. 66-1 at 12.)  (2) Rodriguez "could have come to a full and complete stop prior to entering the intersection had the driver been maintaining a proper lookout." (*Id.* at 18.) (3) "A tractor-trailer being driven 30 mph, even, heavily loaded, should have been able to stop and avoid the collision if the driver had been keeping a

careful lookout." (*Id.* at 19.)  Defendants argue Coon did not apply any scientific principles or perform any calculations to support these conclusions.  (Doc. 66 at 9.)

The motion to exclude these opinions will be granted.  To the extent Coon offers opinions about what legal obligations Rodriguez had or failed to comply with, Plaintiffs have not shown that Coon has expertise in such matters or that such opinions would be helpful to the jury.[2]  With respect to Coon's opinions about Rodriguez's ability to stop his vehicle, such a determination undoubtedly falls within Coon's area of expertise relating to traffic accidents, as it would require measurement and consideration of variables such as the distance involved, the field of view, reaction time, speed, the friction of the roadway, and braking capacity.  But Coon's report did consider or address those matters and his deposition in fact makes clear that he did not calculate them.  (*See* Doc. 66-2 at 123:8-11) ("Q. The – you have not calculated the amount of time or the distance to stop for the tractor-trailer, correct?  A. That's correct.")  Regardless of whether Coon would be capable of performing such a calculation (he undoubtedly would), it is clear he did not do so in this instance.

In response to the foregoing arguments, Plaintiffs assert that Coon did not have to perform these calculations because he "used the table in Volume 2 of the Traffic Accident Investigation Manual 'Traffic Accident Reconstruction' by Lynn B. Fricke of the Northwestern University Traffic Institute instead of doing the calculations by hand." (Doc. 67 at 2.)  Plaintiffs contend Coon thus "considered the coefficient of friction in his use of the table" and his opinion has an adequate foundation.  (*Id.*)  These factual assertions about how Coon reached his opinion appear in Plaintiffs' brief but are not supported by any affidavit from Dr. Coon.  Nor does the brief state

---

[2] Coon's resume shows he has a law degree as well as prior law enforcement experience, but that background does not necessarily make him an expert on the legal obligations the drivers had in this instance.  At any rate, Coon has not been offered as an expert on the law and opinion testimony about the parties' legal duties would not be helpful to the jury.  The court, with the assistance of counsel, will instruct the jury on the parties' legal duties.

when Coon consulted this table or why it was not disclosed in his report.  Moreover, the assertions

appear directly contrary to the testimony Coon gave at his deposition when he was asked about his

opinion:

> Q.  All right.  Now, in terms of the – and if I understand this correctly, you didn't
> do any calculation of the tractor-trailer stopping, so you didn't select a coefficient
> of friction or make any calculation, right?
>
> A.  No.
>
> * * *
>
> Q.  All right.  And then – and then the best math you can come up with based on
> what you studied is that the tractor-trailer had 3.4 seconds to observe the RV,
> decided it was a hazard, and then initiate some sort of action to stop; is that correct?
>
> A.  That's correct.
>
> Q.  And the – you've not run any calculations, but you've concluded that the driver
> would have been able to stop in that amount of time; is that correct?
>
> A.  That's correct.

(Doc. 66-2 at 148:15-20, 194:10-21.)

Plaintiffs have not shown that Coon's opinions about the ability of the tractor-trailer to stop

are the product of a reliable method or that they rest upon a reliable foundation.  The opinions will

accordingly be excluded.  Additionally, the court rejects Plaintiffs' request for oral argument on

Defendants' motion to exclude these opinions.  The request for argument is premised on the

assertion that the matter deals with "complex issues involving mathematics."  (Doc. 76 at 1.)  The

absence of a foundation for Dr. Coon's opinion about the truck stopping to avoid the collision is

apparent from his deposition, and oral argument could in no way alter that fact.  If Dr. Coon had

some basis for offering an opinion about the tractor-trailer's stopping distance, Plaintiffs should

have disclosed it in discovery.

2. <u>Any opinion instructing the jury on the applicable law</u>.  (Doc. 66 at 11.)  Defendants cite three examples of what they contend are improper opinions by Coon upon legal duties: (1) that Rodriguez "can be at fault regardless of whether [his] light was red or green"; (2) that "[t]here is no minimum speed required to cross the intersection"; and (3) that there is no requirement for the RV to enter the intersection on green and "it is completely legal for the RV to enter the intersection at the last moment of the yellow indication."  (*Id.*)  As the court indicated previously, Dr. Coon is an accident reconstruction expert, not a legal expert, and his opinion testimony about legal duties or laws governing the conduct of the respective drivers will be excluded.

Plaintiffs do not specifically respond to the foregoing examples but argue Coon "would reference these rules while explaining what a reasonable driver should do even if they have a green light," and that this "would give the jury the tools to evaluate Mr. Coon's ultimate opinion." (Doc. 67 at 5.)  Plaintiffs can of course request that the court instruct the jury upon any relevant facet of the law, and Coon can perhaps offer opinions assuming that legal framework, but Plaintiffs have not shown it would be helpful to the jury to have an expert at reconstructing accidents offer opinions about when a party "can be at fault" or when a party's action "is completely legal."  The motion to exclude these opinions is granted.

### III.  Motion for Partial Summary Judgment (Doc. 63.)

Defendants argue Y&K Trucking is entitled to summary judgment on Plaintiffs' direct negligence claim against Y&K Trucking because there is no evidence to show that Y&K Trucking negligently hired, retained, or supervised Rodriguez.  (Doc. 64 at 7.)  Defendants contend there is no evidence that Y&K Trucking knew or should have known of any dangerous propensity on Rodriguez's part that created an undue risk of harm from an accident of the kind involving Plaintiffs.  (Doc. 64 at 10.)  Additionally, Defendants argue there is no evidence that any of the

shortcomings in Y&K Trucking's operations identified by Jimmy Sill played any causal role in the accident, such that Plaintiffs cannot maintain a negligence claim against Y&K Trucking. (*Id.* at 13.)

### A. Uncontroverted facts

For purposes of the motion for partial summary judgment, the court finds the following facts are uncontroverted. Y&K Trucking is an authorized motor carrier that had been granted operating authority by the FMCSA that was active at the time of the accident. Rodriguez is the sole owner of Y&K Trucking. Rodriguez was an employee or agent of Y&K Trucking at the time of the accident and was operating within the course and scope of his employment. (Doc. 64 at 3-4.) Rodriguez had 13 years of commercial driving experience prior to starting his company after immigrating to the United States in 2002, obtaining his CDL in 2006, and becoming a U.S. citizen in 2011. (*Id.* at 4.)

At the time of the accident, Rodriguez had a valid Class A CDL issued by the State of Texas. Rodriguez had been found medically qualified to operate a commercial motor vehicle by Dr. Jesus E. Garcia on July 23, 2019, and was issued a two-year medical card under FMCSA regulations that was valid until July 23, 2021. Rodriguez had passed drug tests with Y&K Trucking on January 9, 2019, and on August 13, 2019.

Rodriguez had no prior motor vehicle accidents in a commercial vehicle before the accident at issue in this suit. He had no prior motor vehicle citations during the three-year period prior to starting with Y&K in 2017. FMCSA regulations provide for a three-year "look back" period for accidents and citations for purposes of making hiring decisions. (*Id.* at 5.) FMCSA regulations did not prohibit the use of hands-free Bluetooth phone devices on the date of the accident.

Y&K was issued commercial motor carrier operating authority by the FMCSA in October 2017 and maintained its authority up through the time of the accident.  As a new entrant, Y&K could not maintain its authority after 18 months unless it successfully completed a new entrant safety audit by the FMCSA.  Y&K successfully exited the new entrant program after passing a safety audit by the FMCSA.  (*Id.* at 5-6.)

Plaintiffs' trucking standards expert, Jimmy Sill, is of the opinion that Rodriguez was disqualified from driving by operation of FMCSA regulations because Y&K failed to comply with various FMSCA regulations, including by failing to maintain Rodriguez's medical card on file, failing to document that Rodriguez's CDL had been accepted in place of a driving test,  failure to have a formal training program, failure to conduct a background check on Rodriguez, failure to have a maintenance program, and failing to maintain a driver's qualification file on Rodriguez. Sill conceded that the administrative failures he identified did not play any causal role in the accident.[3]

### B.  Analysis

Plaintiffs contend Y&K Trucking is directly liable for its negligent failure to take various acts required by FMCSA regulations and failure to meet industry standards regarding hiring, training, and managing Rodriguez.  (Doc. 59 at 9-10.[4])   "In order to establish a negligence claim, the plaintiff must establish the existence of a duty, a breach of that duty, an injury, and proximate cause, which means a causal connection between the duty breached and the injury."  *Hale v.*

---

[3] As previously indicated, Sill's testimony will be excluded, in large part because the regulatory failures he identified did not cause or contribute to the collision.  His opinions are included here as part of a fuller discussion of the element of causation that Plaintiffs must show to recover for Y&K Trucking's alleged negligence.

[4] Plaintiffs also contend Y&K Trucking is vicariously liable based upon *respondeat superior*.  That issue is not before the court in the instant motion.

*Brown*, 287 Kan. 320, 322, 197 P.3d 438, 440 (2008) (citing *D.W. v. Bliss*, 279 Kan. 726, 734, 112 P.3d 232 (2005)).

Kansas law specifically recognizes claims for negligent hiring, retention, and supervision. "Negligent hiring and retention requires that the employer, 'by virtue of knowledge of the employee's particular quality or propensity, [has] reason to believe that an undue risk of harm exists to others as a result of continued employment of that employee; and the harm which results must be within the risk created by the known propensity.'" *Chavez-Matchie v. Jack Cooper Transp. Co.*, No. 16-2832-JAR-GEB, 2017 WL 2378334, at \*3 (D. Kan. June 1, 2017) (quoting *Wayman v. Accor N. Am., Inc.*, 251 P.3d 640, 650 (Kan. Ct. App. 2011)). "A claim of negligent supervision 'includes not only the failure to supervise but also the failure to control persons with whom the defendant has a special relationship, including the defendant's employees or persons with dangerous propensities.'" *Id.* (quoting *Wayman,* 251 P.3d at 650) (quoting *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 331, 961 P.2d 1213, 1223 (Kan. 1998)). Liability under these theories is separate and distinct from an employer's *respondeat superior* liability for torts committed by an employee within the scope of his or her employment, which exists regardless of the employer's exercise of due care. *See Marquis,* 265 Kan. at 334.

The standards for proximate cause under Kansas law were recently reviewed by the Kansas Supreme Court. *See Montgomery v. Saleh*, 311 Kan. 649, 659, 466 P.3d 902, 911 (2020). "[P]roximate cause [is] a cause that 'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.'" *Id.* (quoting *Puckett v. Mt. Carmel Regional Medical Center*, 290 Kan. 406, 420, 228 P.3d 1048 (2010)). It has two components: causation in fact and legal causation. *Id.* "Causation in fact means a cause-and-effect

relationship exists between a party's conduct and the resulting harm." *Id.* "Legal causation means a party's conduct might foreseeably create a risk of harm and cause or contribute to the resulting harm." *Id.* (quoting *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015)).

Plaintiffs have failed to cite evidence from which a jury could reasonably find in their favor under these standards on their claim for negligence against Y&K Trucking.  Insofar as they contend Y&K Trucking failed to meet various regulatory requirements for administrative and record-keeping matters, Plaintiffs fail to cite any evidence that these failures caused or contributed to the accident on September 8, 2019.  The failure to properly document Rodriguez's qualifications to drive did not in any direct or foreseeable sense cause Rodriguez to fail to use reasonable care while operating the truck. For example, Y&K Trucking's failure to properly document Rodriguez's medical card and successful drug tests could have played no part in causing Rodriguez's alleged act of failing to yield to Plaintiffs' RV in the intersection.  Similarly, Plaintiffs allege Y&K Trucking lacked a proper background check and training program, but they identify no evidence that could tie such a failure to the accident.  They cite no evidence that Rodriguez would not have passed a proper background check or that anything in his background, experience, or training demonstrated a propensity to drive carelessly, such that his alleged negligence on the date of the accident should have been foreseen by Y&K.  Plaintiffs make clear that their theory of the chain of causation is that Y&K Trucking failed to comply with regulatory requirements, those failures rendered Rodriguez and any other Y&K drivers "disqualified" under the regulations, a disqualified driver should not have been allowed to drive, and the accident would not have happened if Rodriguez had not been allowed to drive the truck on September 8, 2019.  This is not a "natural and continuous sequence, unbroken by an efficient intervening cause, [that] produce[d] the injury," nor is this collision "the natural and probable consequence" of failing to comply with the record-

keeping and administrative requirements identified by Plaintiffs. *Cf. Montgomery,* 311 Kan. at 659. For reasons previously indicated, this chain of events is too attenuated to show that Y&K's regulatory failures caused or contributed to this accident. In fact, it would make the circumstances of the accident largely irrelevant. As previously noted, "[i]mposing liability for FMCSR violations under the theory that the truck or driver would not have been on the road at all removes legal cause from the equation and imposes strict liability." *Raglin*, 2013 WL 6631546, at *2. Under Plaintiffs' theory, Rodriguez's driving would be considered the "cause" of the accident even if he used all due care and complied with all rules of the road governing travel through the intersection. Such a theory would make *any* decision that resulted in Rodriguez – or Plaintiffs for that matter – merely being present and driving through the intersection at the time of the accident a "cause" of the collision. Rodriguez driving negligently (as alleged by Plaintiffs) was not a natural and probable consequence of Y&K's failure to document its compliance with FMCSA regulations. The mere fact that Y&K Trucking's actions resulted in Rodriguez driving the truck on the date in question is not sufficient under Kansas law to show that Y&K's actions caused or contributed to the collision with Plaintiffs. *Cf. Montgomery*, 311 Kan. at 661 ("A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.")

**V.  Conclusion**

Defendants' *Daubert* motions pertaining to Sill and Coon (Docs. 65, 66) are GRANTED;

Plaintiffs' motion for hearing (Doc. 75) is DENIED; and Defendants' motion for partial summary

judgment (Doc. 63) is GRANTED.  IT IS SO ORDERED this 24th day of February, 2022.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE